CITY OF BOSTON *vs.* LOUIS EPPLE.

Suffolk.   March 17, 1915. — May 27, 1915.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Licensing Board of the City of Boston.   Boston.   Fees.*

Under St. 1906, c. 291, § 4, which provides that all licenses issued by the licensing
board of the city of Boston "shall be recorded in the office of said board, and
all fees for said licenses shall be paid into the treasury of said city," the fees
paid by licensees under R. L. c. 100, § 10, of $1 to the secretary of that board as
the recording officer for recording each license must be paid into the city treas-
ury, and the licensing board have no power to direct by vote, "That the secre-
tary need not turn over any more recording fees to the city."

CARROLL, J.   The defendant is the secretary of the licensing
board of the city of Boston.   St. 1906, c. 291.   He was appointed
in June, 1906, and has acted continuously as such secretary up
to the date of the writ in this action.   At the beginning of his
service he received an annual salary of $2,500.   Since January 1,
1913, he has received a salary of $3,000 a year.

Under R. L. c. 100, § 10, each licensee, in addition to the fee
required by § 19 of that chapter for the privilege of selling intoxi-
cating liquor, is called upon to pay a fee of $1 to the recording
officer for recording the license.   Under § 45, the treasurer of
each city and town is required, "within thirty days after the re-
ceipt of money for licenses for the sale of intoxicating liquors,"
to pay to the Treasurer and Receiver General "one-fourth of the
amount so received."   It has been the uniform practice through-
out the Commonwealth under § 45, as well as under the earlier
statutes (St. 1875, c. 99, § 10; Pub. Sts. c. 100, § 14), for city and
town treasurers to pay over to the treasurer of the Commonwealth
one fourth of the fees received for the privilege of doing business
as a liquor dealer.   "But said treasurers have never paid over to
the treasurer of the Commonwealth any part of any amounts
received for recording liquor licenses, nor made any return of
such amounts, nor been required by the treasurer of the Com-
monwealth to make payment or return of such accounts."

Before the St. of 1906, c. 291, creating the licensing board of

the city of Boston, the clerk or secretary of the board of police of the city of Boston, acting under St. 1885, cc. 83 and 323, recorded all liquor licenses and received and retained for himself $1 for recording each license.

St. 1906, c. 291, § 4, declares that except as otherwise provided, the licensing board shall exclusively exercise in the city of Boston all the powers conferred on the board of police for that city, and upon licensing boards by §§ 10–90, both inclusive, of R. L. c. 100, and by R. L. c. 102, relative to common victuallers and innholders; and that the board shall have charge of the licensing of picnic groves, skating rinks, intelligence offices, billiard tables and bowling alleys. The last paragraph of this section (§ 4) is as follows: "All licenses issued by said board . . . shall be recorded in the office of said board, and all fees for said licenses shall be paid into the treasury of said city."

Following the passage of this statute and up to 1913, the defendant paid over to the city of Boston all fees received by him for the recording of licenses.

On February 26, 1913, the licensing board passed this vote: "That the secretary need not turn over any more recording fees to the city." After the passage of this vote the defendant received for recording liquor licenses $1,634 in the year 1913 and $1,439 in the year 1914, making a total of $3,073, which he has not paid into the treasury of the plaintiff city but has appropriated to his own use. The question in the case is whether this sum of $3,073 received for the recording of liquor licenses, belongs to the defendant or to the city of Boston, the defendant maintaining that where the statute directs the payment to the city of "all fees for said licenses," it refers to the fees paid for the license, that is, the sum paid for the right or privilege to sell intoxicating liquor, and it does not refer to the fee paid for the mere recording of the license.

The decision in this case turns upon the true intent and meaning of the words, "and all fees for said licenses shall be paid into the treasury of said city," which words are contained in c. 291, § 4, St. 1906, under which statute the licensing board of the city of Boston was appointed by the Governor of the Commonwealth, and which board in turn under § 1 appointed the defendant, who has been acting as the secretary since 1906. What were the license

fees referred to when the Legislature in the above quoted phrase directed the board to pay over all fees to the city of Boston? The Legislature had some purpose in view in using this language, and intended thereby to provide for the ultimate distribution of fees, a matter which under the then existing law was not clearly and sufficiently provided for. To determine the precise meaning of these words and the intent of the Legislature in adopting them, we must have resort to the provisions of law existing at the time the statute under consideration was enacted, and determine if possible what fees, if any, were to be paid to the licensing board, and whether the distribution and payment of these fees were already regulated and governed by statutes then in existence and which were not repealed by the act of 1906.

If any fees other than the recording fee were not properly payable to the licensing board, or if other fees were paid to it, and such fees were to be paid over by the board to the city treasurer under provisions of law then existing, it follows that the only possible fee referred to in the act creating the board is this recording fee, and the statute would be meaningless if it did not embrace this fee and provide for its payment to the city of Boston.

Under § 4 of the St. of 1906, c. 291, the licensing board was authorized to issue licenses for the sale of intoxicating liquors; but the board as such received none of the license fees paid for the right to carry on the liquor business. That money must be paid directly to the city treasurer, R. L. c. 100, § 42, so that the Legislature could not have had in mind the distribution of the liquor license money when it required the board to pay to the city all fees for licenses, because the distribution and payment of that money was already sufficiently provided for.

The board also was permitted to grant licenses to innholders and common victuallers; but under R. L. c. 102, § 2, no fee was to be paid to anyone for the privilege of carrying on the business of an innholder or a common victualler. See St. 1910, c. 383, which requires a fee for such license of not more than $5.

Under R. L. c. 102, § 186, in the city of Boston the board of police were given power to issue licenses to keepers of picnic groves, skating rinks, intelligence offices, billiard tables, bowling alleys, and under St. 1902, c. 187, § 4, to junk dealers. By St. 1906, c. 291, § 4, this power was given to the licensing board of the city

of Boston, who were commissioned to receive a fee of not less than $2 for each of such licenses; but they were therein specifically ordered to receive such fees for the use of the city.

No fees, therefore, were received by the defendant in the years 1913 and 1914, whose distribution and final disposal were not already fully and clearly provided for under the law of the Commonwealth dealing directly with these licenses and the fees therefor. Applying the familiar rule of construction that every word and sentence in a statute is supposed to be inserted for a purpose, and to have some force and effect, the words "all fees for said licenses shall be paid into the treasury of said city," mean nothing unless they are aimed directly at this one fee for recording liquor licenses, which is the only fee received by the licensing board not fully taken care of in its distribution by existing law.

The agreed statement of facts declares that under the St. of 1885 the clerk of the board of police retained for his own use the recording fee of $1. In the St. of 1885, no mention is made of any fees, and there is no language referring to the recording fee or to its disposition; and it was probably because of this omission that it was then understood that the clerk had the right to retain this fee for himself. The Legislature undoubtedly was aware of this fact and inserted the clause under consideration in the St. of 1906, for the purpose of putting an end to the practice, thus diverting this fee, with all other fees, to the treasury of the city.

This determination of the Legislature in requiring the return to the city of all fees of any kind received by the board is in harmony with what seems to be its settled policy in compelling all salaried employees of the State, cities and towns, to account for all fees received by them. Under R. L. c. 26, § 17, all fees and commissions of city clerks, city treasurers, collectors of taxes, or any other officer of a city, must be paid into the city treasury. Fees for the copying of public records by an employee of the Commonwealth are to be paid into the treasury of the Commonwealth. R. L. c. 18, § 15. So with moneys received by the Secretary of State, by officers of public institutions, by the Attorney General and district attorneys, and by the reporter of decisions of the Supreme Judicial Court. R. L. c. 5, § 1; c. 6, § 56; c. 7, § 20; c. 165, § 67.

We are therefore of opinion that all the fees for the recording

of liquor licenses, received during the years 1913 and 1914 and now held by the defendant, are the property of the plaintiff city.

The case comes before us on a report,* and judgment is to be entered for the plaintiff in the sum of $3,073, with interest from the date of the writ.

*So ordered.*

*J. P. Lyons,* for the plaintiff.
*F. T. Hammond,* for the defendant.

* By *Wait,* J., to whom the case was submitted on an agreed statement of facts.