BOSTON LICENSING BOARD *vs.* ALCOHOLIC BEVERAGES CONTROL COMMISSION.

Suffolk.   March 6, 1975. — May 21, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Alcoholic Liquors,* Alcoholic Beverages Control Commission. *Regulation. Equity Jurisdiction,* Declaratory relief. *Equity Pleading and Practice,* Intervention. *State Administrative Procedure Act. Constitutional Law,* Who may question constitutionality.

Where the Boston Licensing Board promulgated regulations governing sexually explicit conduct in establishments licensed by the board to sell liquor and suspended one license after finding a violation, but the licensee appealed to the Alcoholic Beverages Control Commission which declared the regulations to be invalid and ordered the suspension vacated, failure of the board to seek direct review of the commission's decision under G. L. c. 30A, § 14, did not preclude the board from seeking declaratory relief against the commission to determine whether the board had authority to issue such regulations. [792]

Where the Boston Licensing Board suspended a license for violation of its regulations regarding sexually explicit conduct in licensees' establishments and the Alcoholic Beverages Control Commission ordered such suspension vacated, but the board brought a suit in equity for declaratory relief to determine the board's authority to

make such regulations, the licensee was not entitled to intervene in the suit where the decision would not affect the vacated suspension and where the constitutional rights of licensees subject to the regulations were not decided.  [792-793]

Where the Boston Licensing Board promulgated regulations regarding sexually explicit conduct in the establishments of its licensees, and the regulations were challenged by the Alcoholic Beverages Control Commission on constitutional grounds in a suit in equity by the board against the commission for declaratory relief to determine the board's authority to promulgate the regulations, a decision as to the constitutional issues should be deferred until a party whose own rights were affected should be before the court.  [793-794]

The Boston Licensing Board has authority under G. L. c. 138, § 23, as amended through St. 1971, c. 477, § 3, to promulgate regulations regarding sexually explicit conduct in establishments licensed by the board for thè sale of alcoholic beverages to be served and drunk on the premises.  [794-796]

Where, after a public hearing held by the Boston Licensing Board following notice to licensees, State and local officials and citizens groups, the board promulgated regulations regarding explicit sexual conduct in establishments licensed to sell liquor, such hearing met the requirement of G. L. c. 138, § 23, for an "opportunity for a hearing" respecting regulations.  [796-797]

BILL IN EQUITY filed in the Superior Court on December 19, 1973.

The suit was reported to the Appeals Court by *Ronan*, J.  The Supreme Judicial Court, on its own initiative, ordered direct review.

*Lawrence J. Ball*, Special Assistant Corporation Counsel, for the Boston Licensing Board.

*Howard S. Whitehead*, Deputy Assistant Attorney General (*Michael Eby*, Deputy Assistant Attorney General, with him) for the Alcoholic Beverages Control Commission.

*Morris M. Goldings* for United Food Corporation.

BRAUCHER, J.  Following the decision in *California v. LaRue*, 409 U. S. 109 (1972), the Boston Licensing Board (board) promulgated rules and regulations similar to those upheld in the *LaRue* case, governing sexually

explicit conduct in establishments licensed by the board to sell liquor. The Alcoholic Beverages Control Commission (commission) decided that the board was not authorized to make such rules and regulations. We hold that the challenged authority exists under G. L. c. 138, § 23,[1] as amended through St. 1971, c. 477, § 3.

The board brought this bill for declaratory relief in the Superior Court, and the judge reported it without decision to the Appeals Court on the pleadings and a statement of agreed facts. The case was transferred to this court under G. L. c. 211A, § 10 (A). We summarize the agreed facts.

On December 20, 1972, the board issued the regulations set forth in the margin.[2] On January 12, 1973, the

---

[1] General Laws c. 138, § 23, reads in part: "The terms licenses and permits, wherever employed as substantives in this chapter, are used in their technical sense of a license or permit . . . revocable . . . for any violation of this chapter or *any regulation adopted by the* commission or *local licensing authority* consistent with the terms of this chapter after opportunity for a hearing. . . . Whenever, in the opinion of the local licensing authorities, any applicant . . . fails to establish to their satisfaction his compliance with the requirements of this chapter, *or any other reasonable requirements which they may . from time to time make with respect to licenses . . . or to the conduct of business by any licensee* thereunder, said authorities may refuse to issue or reissue to such applicant any such license; . . ." (emphasis supplied).

[2] "Rules and Regulations for 1973 Licenses for the Sale of Alcoholic Beverages to Be Served and Drunk on the Premises Granted Pursuant to G. L. c. 138, sections 1 and 12.

"The following acts or conduct in or on licensed premises are deemed contrary to the public need and to the common good and therefore no license shall be held for the sale of alcoholic beverages to be served and drunk on the licensed premises where such acts or conduct are permitted.

"I.   ATTIRE AND CONDUCT OF EMPLOYEES, ENTERTAINERS, AND OTHER PERSONS

"A.   It is forbidden to employ or permit any person in or on the licensed premises while such person is unclothed or in such attire as to expose to view any portion of the areola of the female breast or of any portion of the pubic hair, cleft of the buttocks, or genitals.

board held a public hearing to receive comments on the regulations, and it subsequently promulgated the regulations. On February 7, 1973, the board held a hearing

"B.   It is forbidden to employ or permit any hostess or other person to mingle with the patrons while such hostess or other person is unclothed or in such attire as described in paragraph A above.

"C.   It is forbidden to encourage or permit any person in or on the licensed premises to touch, caress, or fondle the breasts, buttocks, or genitals of any other person.

"D.   It is forbidden to employ or permit any person to wear or use any device or covering exposed to view which simulates the breasts, buttocks, pubic hair, or genitals or any portions thereof.

"E.   It is forbidden to employ or permit any person in or on the licensed premises to perform an act or acts, or to simulate an act or acts, of:

"1. sexual intercourse, masturbation, sodomy, flagellation, or any sexual acts prohibited by law; or

"2. touching, caressing, or fondling of the breasts, buttocks, or genitals of another.

## "II.   VISUAL DISPLAYS

"It is forbidden to employ or permit any person in or on the licensed premises to show motion picture films, television-type cassettes, still pictures, or other photographic reproductions depicting any of the acts, or any simulation of any of the acts, prohibited in Rule I of these Rules and Regulations.

## "III.   SEVERABILITY

"If any of the provisions of these Rules and Regulations or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions of such Rules and Regulations, or the application of such other provisions, which can be given effect without the invalid provision or application thereof, and for this purpose the provisions of these Rules and Regulations are severable.

## "IV.   OTHER LAWS

"Notwithstanding any of the foregoing Rules and Regulations, no person duly licensed by the Licensing Board for the City of Boston under G. L. c. 138, sections 1, 12, or 23 shall employ, use the services of, or permit upon his licensed premises any employee, entertainer, or other person who by his or her attire or conduct violates any General Law, Special Act, or Ordinance of the City of Boston.

## "V.   EFFECTIVE DATE

"The foregoing Rules and Regulations shall take effect on January 1, 1973."

to determine whether a licensee, the United Food Corporation of Boston, had violated the regulations, found a violation, and imposed a three-day suspension of the licensee's alcoholic beverage license. The licensee appealed to the commission, which issued a decision directing the board to vacate the suspension, declaring that the regulations were without force and effect, and requiring that they be "properly voided" by the board and that "proper notice" be sent to all licensees. No petition for judicial review of that decision has been filed. The commission has not issued regulations of this type and does not intend to.

1. *Declaratory relief.* The decision of the commission was subject to judicial review under G. L. c. 30A, § 14. *Kneeland Liquor, Inc.* v. *Alcoholic Beverages Control Commn.* 345 Mass. 228, 229 (1962). The commission argues that it is not appropriate to grant declaratory relief to a party which has ignored its statutory right of direct review, citing G. L. c. 231A, § 3, and *Goldman* v. *Planning Bd. of Burlington,* 347 Mass. 320, 326 (1964). We agree that the present case would not be an appropriate vehicle for review of the license suspension or of the commission's order that the suspension be vacated. But we think that judicial review of the board's regulations by a bill for declaratory relief is not precluded. G. L. c. 231A, § 2. Cf. *Paquette* v. *Fall River,* 338 Mass. 368, 377 (1959); *Westland Housing Corp.* v. *Commissioner of Ins.* 352 Mass. 374, 380-383 (1967); *Cambridge Elec. Light Co.* v. *Department of Pub. Util.* 363 Mass. 474, 502 (1973).

2. *Intervention by the licensee.* The licensee whose suspension had been ordered vacated sought to intervene in the action in the Superior Court. Leave to intervene was denied, and the licensee filed a bill of exceptions, included by the judge in his report. Since the decision in this case will not affect the vacated suspension, and since we do not pass on the constitutional rights of licensees subject to the regulations in question, we hold that there

was no abuse of discretion in denying the petition for intervention. See *Dillaway* v. *Burton,* 256 Mass. 568, 576-577 (1926); *Check* v. *Kaplan,* 280 Mass. 170, 178 (1932). Cf. Mass. R. Civ. P. 24, 365 Mass. 769 (1974). A decision on the allocation of powers between the board and the commission can properly be made without the participation of all the licensees and others who may be indirectly affected. See *Brookline* v. *County Commrs. of the County of Norfolk, ante,* 345, 349 (1975).

3. *Constitutional issues.* The constitutional climate in which the statutes and regulations must operate is of course an important part of the context in which they must be interpreted. We therefore take note of the fact that the United States Constitution, as interpreted by the Supreme Court, leaves some room for the regulation of sexually explicit conduct in establishments licensed to sell alcoholic beverages. *California* v. *LaRue,* 409 U. S. 109, 118-119 (1972). Cf. *Paladino* v. *Omaha,* 471 F. 2d 812, 814 (8th Cir. 1972); *Oberhelman* v. *Schultze,* 371 F. Supp. 1089, 1091 (D. Minn. 1974), affd. without opinion, 505 F. 2d 736 (8th Cir. 1974); *Manos* v. *Green Bay,* 372 F. Supp. 40, 46-47 (E. D. Wis. 1974); *Clark* v. *Fremont,* 377 F. Supp. 327, 342 (D. Neb. 1974); *Cheetah Enterprises, Inc.* v. *County of Lake,* 22 Ill. App. 3d 306, 312-313 (1974); *Salem* v. *Liquor Control Commn.* 34 Ohio St. 2d 244, 248-249 (1973); *Seattle* v. *Hinkley,* 83 Wash. 2d 205, 206-208 (1973). Constitutional limitations seem to have been applied more restrictively, at least in some courts, to regulation of similar conduct not associated with alcoholic beverages. Compare *Starshock, Inc.* v. *Shusted,* 370 F. Supp. 506 (D. N. J. 1974), reversed without opinion 493 F. 2d 1401 (3d Cir. 1974) (nude dancing after liquor license revoked); *Salem Inn, Inc.* v. *Frank,* 501 F. 2d 18, 20-21 (2d Cir. 1974), probable jurisdiction noted sub nom. *Doran* v. *Salem Inn, Inc.* 419 U. S. 1119 (1975) ("topless" dancing prohibited in any "public place"), with *Crownover* v. *Musick,* 9 Cal. 3d 405, 427-428 (1973)

(valid regulation of nude conduct in public places), cert. den. sub nom. *Reynolds* v. *Sacramento,* 415 U. S. 931 (1974); *Wayside Restaurant, Inc.* v. *Virginia Beach,* 215 Va. 231, 236 (1974) (regulation of nudity in public places valid as applied to licensees selling beer and wine).

We do not think, however, that we should pass on the commission's claim that the board's regulations violate the First and Fourteenth Amendments to the Constitution of the United States and art. 16 of the Declaration of Rights of the Constitution of the Commonwealth. Ordinarily constitutional questions may only be litigated by persons whose interests are affected. See *Commonwealth* v. *Brunelle,* 361 Mass. 6, 10-11 (1972), and cases cited; cf. *School Comm. of Springfield* v. *Board of Educ.* 362 Mass. 417, 445 (1972). The commission's constitutional rights are not in issue. Like the Supreme Court in the *LaRue* case, we think we should reserve for another day the question whether some specific application of the regulations may engender problems of constitutional dimension. See 409 U. S. at 119 n. 5 (1972). Similarly, we think we should not now pass on such questions as whether their possible application in one hypothetical case would render them overbroad and hence invalid in another hypothetical case, how far they are severable, or whether they are underinclusive so as to discriminate unfairly.

4. *The board's authority.* The regulations are made applicable to licenses for the sale of alcoholic beverages to be served and drunk on the premises granted pursuant to G. L. c. 138, §§ 1 and 12, as amended. Such licenses are granted by the board, "subject to the prior approval of the commission." See *Webster* v. *Alcoholic Beverages Control Commn.* 295 Mass. 572, 575, (1936); *Coyne* v. *Alcoholic Beverages Control Commn.* 312 Mass. 224, 228-229 (1942). License fees and hours of operation are fixed by the board within statutory limits. The "licensing authorities," defined in G. L. c. 138, § 1, as either the board or the commission or both, may

"modify, suspend, revoke or cancel" a license. G. L. c. 138, § 64, as amended through St. 1964, c. 64. Any person aggrieved by a decision of the board may appeal to the commission, but if the commission disapproves the board's action it can only recommend the action to be taken by the board. Except in certain cases of reappeal to the commission, the board is not bound to follow the recommendation of the commission. G. L. c. 138, § 67, as amended through St. 1971, c. 477, § 4. *Largess* v. *Nore's Inc.* 341 Mass. 438, 442 (1960). *Dixie's Bar, Inc.* v. *Boston Licensing Bd.* 357 Mass. 699, 702 (1970).

The commission has comprehensive powers of supervision over licensees. *Connolly* v. *Alcoholic Beverages Control Comm.* 334 Mass. 613, 617 (1956). It may make regulations for "clarifying, carrying out, enforcing and preventing violation of" statutory provisions for the "method of carrying on the business of any licensee," and "for the proper and orderly conduct of the licensed business." G. L. c. 138, § 24, as appearing in St. 1971, c. 478. Licenses are also revocable for violation of "any regulation adopted by the commission or *local licensing authority*" (emphasis supplied), and local licensing authorities are to make "reasonable requirements" with respect to "the conduct of business by any licensee." G. L. c. 138, § 23, quoted in part in fn. 1, *supra.*

The only relevant regulation of the commission which has been brought to our attention is its Regulation 21: "No licensee for the sale of alcoholic beverages shall permit any disorder, disturbance or illegality of any kind to take place in or on the licensed premises. The licensee shall be responsible therefor, whether present or not." It is not contended that the board's regulations are inconsistent with that rule or repugnant to it. Cf. *Bloom* v. *Worcester*, 363 Mass. 136, 152-157 (1973). The fact that the commission could issue regulations on the same subject does not of itself invalidate the board's regulations. Cf. *Druzik* v. *Board of Health of Haverhill*, 324 Mass. 129, 136 (1949). We do not find in the

statutes the limitation of purpose, asserted by the commission, to the preservation of public safety and good order. "The liquor traffic has long been recognized as a source of danger to the public welfare, health and safety, and regulations governing the conduct of the business and frequently going to the extent of prohibiting it altogether have been sustained." *Supreme Malt Prod. Co. Inc.* v. *Alcoholic Beverages Control Commn.* 334 Mass. 59, 61 (1956). Cf. *Liggett Drug Co. Inc.* v. *License Commrs. of No. Adams,* 296 Mass. 41, 50 (1936). We think the board's regulations are within the scope of its authority.

5. *Opportunity for hearing.* Regulations of the commission are to be made in accordance with G. L. c. 30A, and are to be approved by the Governor. G. L. c. 138, §§ 24, 71. Before a regulation is adopted or amended, the commission must ordinarily give notice and hold a public hearing, or give notice and afford interested parties an opportunity to present data, views or arguments. G. L. c. 30A, §§ 2, 3. *Kneeland Liquor, Inc.* v. *Alcoholic Beverages Control Commn.* 345 Mass. 228, 233-235 (1962). The board is not a State "agency" subject to G. L. c. 30A. *Dixie's Bar, Inc.* v. *Boston Licensing Bd.* 357 Mass. 699, 702 (1970). The statute authorizing board regulations, however, refers to regulations adopted "after opportunity for a hearing." See fn. 1 *supra.* The commission contends that it has the implied duty to insist that the board meet minimum procedural standards similar to those the commission itself must meet.

We do not pass on this claim of the commission, since we think there is no showing that the board failed to provide the required "opportunity for a hearing." Although the board's regulations were first issued on December 20, 1972, to be effective January 1, 1973, a public hearing was held on January 12, 1973, and the commission concedes that the board subsequently promulgated the regulations. The transcript of the hearing is before us and shows an undisputed statement

by counsel that notice was sent about December 27 to every licensee under G. L. c. 138, § 12, to every city of Boston elected State representative and senator, and city councillor, to other city and State officials including the commission, and to various neighborhood groups.

The transcript discloses police testimony, much like that described in the *LaRue* opinion, 409 U. S. 109 (1972), as to the connection between explicit sexual entertainment in bars and the commission of various crimes. It also discloses statements of views by or on behalf of several public officials, including the chairman of the commission, by representatives of neighborhood groups, and by an attorney for the Civil Liberties Union of Massachusetts. No one spoke on behalf of a licensee, but it seems clear that there was an opportunity to be heard.

6. A judgment is to be entered in the Superior Court declaring that (1) the board's regulations are within the scope of its authority, (2) the procedure of the board in adopting them was proper, and (3) these declarations are made without prejudice to any claim of violation of constitutional right.

*So ordered.*