708 373 Mass. 708

Bd. of Selectmen of Barnstable *v.* Alcoholic Beverages Control Comm'n.

BOARD OF SELECTMEN OF BARNSTABLE *vs.* ALCOHOLIC
BEVERAGES CONTROL COMMISSION & others.[1]

Barnstable.    September 14, 1977. — November 21, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Alcoholic Liquors. Alcoholic Beverages Control Commission,* Author-
ity. *License. Municipal Corporations,* Licensing board.

The Alcoholic Beverages Control Commission correctly decided on sub-
stantial evidence that there had been procedural impropriety in the
granting by the board of selectmen of a town under G. L. c. 138,
§§ 12, 17, of six licenses for the sale of all alcoholic beverages, ap-
plied for by twenty-seven applicants, where it appeared that one of
the board members was the wife of an applicant, and that, although
she had not participated in the establishment of the order of voting
on the applications or in the first vote, which granted her husband
a license, she had thereafter participated in the consideration and
voting with respect to the other twenty-six applications. [710-714]
Upon a warranted finding by the Alcoholic Beverages Control Commis-
sion that there had been procedural impropriety in the granting by
the board of selectmen of a town of applications for licenses under
G. L. c. 138, §§ 12, 17, for the sale of all alcoholic beverages, the com-
mission had authority on an appeal under § 67 to disapprove the
action of the board, without entering into the merits of the applica-
tions, and to remand matters to the board for new hearings on the
applications, but without the participation of a member disqualified
by interest. [714-718]
The Alcoholic Beverages Control Commission, in disapproving the
granting by the board of selectmen of a town of licenses for the sale
of all alcoholic beverages by reason of the disqualification by interest
of a member of the board, was not bound to a strict application of
the criteria of the conflict of interest statute, G. L. c. 268A, as
amended through 1975. [718-719]

CIVIL ACTION commenced in the Superior Court on May
27, 1976.

The case was heard by *Good,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

[1] Interveners are Tri-Nel Management, Inc., and M. D. Armstrong's,
Inc.

373 Mass. 708                                               709

Bd. of Selectmen of Barnstable *v.* Alcoholic Beverages Control Comm'n.

*Andrew J. McElaney, Jr.,* Assistant Attorney General, for Alcoholic Beverages Control Commission.

*Edward W. Kirk* for Tri-Nel Management, Inc.

*J. Douglas Murphy,* Assistant Town Counsel, for the Board of Selectmen of Barnstable.

*Alan A. Green* for M. D. Armstrong's, Inc.

KAPLAN, J.   Because of increase in its population, the town of Barnstable became eligible in 1976 to make awards of seven new year-round licenses for the sale by common victuallers of all alcoholic beverages to be drunk on the premises ("pouring" licenses). See G. L. c. 138, §§ 12, 17. Twenty-seven firms or individuals presented applications to the board of selectmen (hereafter the board), which acts as the local licensing authority (see G. L. c. 138, § 1, & note 16 *infra*), and the board after hearings granted licenses to seven of these applicants. Tri-Nel Management, Inc., owner of the Windjammer Lounge, was one of those denied a license — a near miss, as will appear, as Tri-Nel might have been granted a license, had not a license been awarded to M. D. Armstrong's, Inc., owner of a restaurant of that name. Tri-Nel appealed from the denial to the Alcoholic Beverages Control Commission (commission) pursuant to G. L. c. 138, § 67,[2] claiming that there were material flaws in the board's proceedings because of the relation to and participation in them of Mrs. Mary K. Montagna, who was one of the three selectmen constituting the board and the wife of a successful applicant, Cosmo J. Montagna, owner of the Marlin restaurant. The commission held a hearing at which, in addition to receiving minutes of the hearings held by the board, it heard testimony by each of the selectmen. The commission filed

---

[2] Section 67, as appearing in St. 1953, c. 672, provides in part: "Any applicant for a license who is aggrieved by the action of the local licensing authorities in refusing to grant the same, or by their failure to act within the period of thirty days limited by section sixteen B, . . . may appeal therefrom to the commission within five days following notice of such action or following the expiration of said period, upon petition in writing, setting forth all the material facts in the case."

a written decision holding that there had been procedural impropriety, and accordingly it withheld approval under G. L. c. 138, §§ 12 and 67 (texts at note 9 *infra*), of six of the licenses granted by the board,[3] and remanded to the board for new hearings for the applicants for those licenses. The board, as plaintiff, sought review under the State Administrative Procedure Act, G. L. c. 30A, § 14, of the decision in the Superior Court, with the commission as defendant, and Tri-Nel and M. D. Armstrong's, Inc., admitted as interveners.[4] A judge of the Superior Court reversed the commission's decision, and in his judgment directed, among other things, that the commission approve the six licenses granted by the board. The commission appealed to the Appeals Court, and we granted a request for direct review under G. L. c. 211A, § 10 (A). We disagree with the judge; he failed to take due account of the irregularities in the proceedings before the board, and took too narrow a view of the commission's authority. We reverse the judgment and reinstate the commission's decision.

1. *Procedural irregularities.* When Mrs. Montagna was elected as a member of the board of selectmen in March, 1975, it was recognized that problems were likely to arise about her participation in the board's work as liquor licensing authority. Therefore the board sought an opinion of town counsel. His advice, summed up, was that Mrs. Montagna should avoid acting on the Marlin's then current application for renewal of a seasonal license, and, if that were granted, should avoid "acting on any matter involving any on premise pouring liquor license within a

---

[3] The parties raise no question about the license awarded to the Ramada Inn, which was earlier approved by the commission.

[4] The commission questions whether § 14 review is properly available, but indicates correctly that a declaratory action would be available in the present situation if § 14 were inapposite; the considerations would be roughly the same. See *Canney* v. *Municipal Court of the City of Boston,* 368 Mass. 648, 654-655 (1975); *Boston Licensing Bd.* v. *Alcoholic Beverages Control Comm'n,* 367 Mass. 788, 792 (1975); *Westland Hous. Corp.* v. *Commissioner of Ins.,* 352 Mass. 374, 383-385 (1967); *South Shore Nat'l Bank* v. *Board of Bank Incorporation,* 351 Mass. 363 (1966).

reasonable proximity" of the Marlin.[5] It will be seen that the board and Mrs. Montagna took some precautions about the consideration of a license to the Marlin itself, but ignored or misunderstood the problem about other licenses.

On Friday, February 20, 1976, when the board's hearings began, a decision was taken without Mrs. Montagna's participation to consider applications in the order in which they were filed. The Marlin application was dealt with first, Mrs. Montagna abstaining. (Actually it is not clear from the record that that application was the first filed among the three earliest filed, all on January 23, 1976.) Selectman Eshbaugh pointed out that the statute (c. 138, § 16B) required that applications be acted on within a period of thirty days of receipt, which would expire the next Monday. He remarked, in effect, that it would be well to dispose of the Marlin application so that it would not be "hanging over" the other applications on which Mrs. Montagna would be deliberating and voting. With very brief discussion in which no other application was mentioned, selectmen Eshbaugh and Brown voted a license for the Marlin.

Consideration and disposition of the other twenty-six applications, with Mrs. Montagna participating and voting, took place later on February 20, and on February 24, 25, and 26. The plan of following the order of filing was not adhered to after ·February 20. Five licenses were granted in the Main Street area of Hyannis. These restaurants were not in the Marlin's immediate neighborhood. On the road on which the Marlin was located (Route 132 becoming Route 28), the only other award, evidently a meritorious one, was made to the Ramada Inn (see note 3 *supra*), which, however, was closer to Main Street and the Hyannis town center than to the Marlin. Mrs. Montagna spoke up when two applicants on the road were considered, the Windjammer and the Red Coach Grille,

[5] Counsel believed that Mrs. Montagna's joinder in these decisions would likely encompass violations of G. L. c. 268A, the conflict of interest statute.

both ultimately unsuccessful but discussed with more favor than any of the other failing applicants. Mrs. Montagna argued that the Red Coach should be denied a license because the owner, the Howard Johnson Company, already had a license on Main Street. At the commission hearing she said she voted against the Red Coach because of a parking problem and road congestion (although it already had a summer license, a season when these difficulties presumably were aggravated). The last award made was to M. D. Armstrong's on Main Street. Mrs. Montagna endorsed that application while selectman Eshbaugh was torn between that restaurant and the Windjammer.[6]

Appraising the whole case before it, the commission said in its decision (set out in part in the margin)[7] that there was no evidence of improper exercise of influence by Mrs. Montagna. But it held that "the manner in which the proceedings were held and the participation of Mrs. Montagna in decisions relating to the locations of potential competitors was improper." The "appearance of conflict and the potential for deference by other Selectmen to

---

[6] For purposes of this appeal, it would not matter that it could be found that Mrs. Montagna was acting in good faith and trying to be objective.

[7] "Although Mrs. Montagna did not sit nor take part in the vote relating to the Marlin Restaurant because of her obvious interest therein, it is the opinion of the Commission that the manner in which the proceedings were held and the participation of Mrs. Montagna in decisions relating to the locations of potential competitors was improper. This Commission makes no finding nor was there any evidence presented to it relating to any improper exercise of influence by Mrs. Montagna. However, we believe that the appearance of conflict and the potential for deference by other Selectmen to her interests is too real and obvious to be ignored. This is particularly so since the Marlin Restaurant was the first applicant considered and approved. Effective discussion relating to the comparative merits of the Marlin Restaurant for the license as opposed to the other applicants was thereby inhibited and put to bed very early in the day.

"Accordingly, it is ordered that this matter be remanded to the Board of Selectmen of Barnstable and that new hearings be held by the Board with respect to all applicants for those licenses which have not yet been approved by this Commission. We deliberately do not limit our decision merely to the appellant herein. Mrs. Montagna should take no part in either the discussions nor the vote with respect to these licenses if approval by this Commission is anticipated."

373 Mass. 708											713

Bd. of Selectmen of Barnstable *v.* Alcoholic Beverages Control Comm'n.

her interests is too real and obvious to be ignored." As to the award to the Marlin itself, in the rush to consider and dispose of that application "[e]ffective discussion relating to the comparative merits of the Marlin Restaurant for the license as opposed to the other applicants was ... inhibited and put to bed very early in the day." After that award, Mrs. Montagna had an evident interest as a competitor in the awards of licenses to others which made it awkward to the point of impropriety for her to participate in the discussion and voting on those applications. Hence the commission decided to refuse approval of the licenses and indicated that Mrs. Montagna should take no part in any resumed proceedings by the board.

Whether the licensing function is characterized by the term "quasi judicial," see *Albano* v. *Selectmen of S. Hadley,* 341 Mass. 494, 495 (1960), or by some other term betokening impartiality and disinterestedness, it seems to us that the standards of propriety to which the commission appealed were commonsensical (see *Jaffarian* v. *Murphy,* 280 Mass. 402, 405 [1932]; *Josephson* v. *Planning Bd. of Stamford,* 151 Conn. 489 [1964]; *S & L Associates, Inc.* v. *Washington,* 61 N.J. Super. 312 [1960], aff'd in part and rev'd in part, 35 N.J. 224 [1961]), and the decision reached was supported by substantial evidence. See G. L. c. 30A, § 14 (8) (*e*); *Katz* v. *Massachusetts Comm'n Against Discrimination,* 365 Mass. 357, 365 (1974); *Almeida Bus Lines, Inc.* v. *Department of Pub. Utils.,* 348 Mass. 331, 341-342 (1965). As to the desirability of a comparative assessment regarding the Marlin application, it may be acknowledged that the realities of proceedings before a board of selectmen may often prevent perfect comparison when many applicants apply for a limited number of licenses; but however flexible the criterion may have to be, it is nevertheless significant and should not be ignored. Cf. *Bay State Harness Horse Racing & Breeding Ass'n* v. *State Racing Comm'n,* 342 Mass. 694, 702-703 (1961). Here more meaningful comparative appraisal was possible and should have been pursued. The commission was warranted in finding that, in a situation calling par-

ticularly for circumspection, all sense of comparison was abandoned in the anxiety to free Mrs. Montagna to join in discussing and voting on the other applications.[8] Then, coming to the participation of Mrs. Montagna in deciding those other applications, her special interest was such as amply to warrant her disqualification. As this court said in the *Albano* case, *supra,* involving alleged improper participation by a selectman in the grant of a permit, what was to be avoided was "suspicion or suggestion of action motivated by private interest." *Id.* at 496. It would not matter that in the end the licenses might be found in a substantive sense to have gone to the most meritorious applicants (an inquiry which the commission did not reach). The procedure was faulty and vitiated the result.

2. *Authority of the commission.* Answering the challenge to the authority of the commission to check the local board as it did here, we hold that the commission had competence to decline approval of the licenses on the ground of procedural irregularity; its decision was not "[i]n excess of [its] statutory authority or jurisdiction" (G. L. c. 30A, § 14 [8] [*b*]).

A pouring license needs the approval of both the local licensing board and the commission to become effective. See G. L. c. 138, §§ 12 and 67.[9] If the board approves, but the commission does not, the license does not go into

---

[8] The need to reach early decision on the applications filed on January 23 did not prevent comparison with others, for the others had been filed by early February and were known when the hearings commenced on February 20.

[9] Section 12 provides in part that a victualler "may be licensed by the local licensing authorities, subject to the prior approval of the commission."

See the partial text of § 67 quoted at note 2 *supra.* Section 67 also provides: "If the commission approves the action of the local licensing authorities it shall issue notice to them to that effect, but if the commission disapproves of their action it shall issue a decision in writing advising said local authorities of the reasons why it does not approve, and shall then remand the matter to the said local authorities for further action. The commission shall not in any event order a license to be issued to any applicant except after said applicant's application for license has first been granted by the local authorities."

373 Mass. 708                                                        715

Bd. of Selectmen of Barnstable *v.* Alcoholic Beverages Control Comm'n.

effect; but the commission does not have a power of compelling approval of its preferred licensee, the matter after the § 67 appeal simply goes back to the board. See *Dixie's Bar, Inc.* v. *Boston Licensing Bd.*, 357 Mass. 699, 702 (1970); *Largess* v. *Nore's, Inc.*, 341 Mass. 438, 442 (1970). Cf. *Boston Licensing Bd.* v. *Alcoholic Beverages Control Comm'n,* 367 Mass. 788, 794-795 (1975); *Revere* v. *Aucella,* 369 Mass. 138, 143-144 (1975), and *id.* at 149, Kaplan, J., dissenting in part (with Tauro, C.J.).

In the interplay of State and local authority, the commission has considerable scope. In *Connolly* v. *Alcoholic Beverages Control Comm'n,* 334 Mass. 613 (1956), we find an important discussion of the range of authority of the commission, which in that case had declined to approve a license awarded by the Framingham selectmen. On review in this court of the commission's action, it was argued that the commission could not refuse approval, after the board's affirmative vote, except for personal unfitness of the applicant, which had not been suggested. We examined at some length the position of the commission in the scheme of the statute, concluding thus: "The legislative history of G. L. (Ter. Ed.) c. 6, § 43,[10] and of G. L. (Ter. Ed.) c. 138, as amended, clearly shows that the powers of the commission were not intended to be perfunctory or limited. In the very respect here in issue, the approval or disapproval of the action of local licensing authorities, that history[11] indicates that the commission was charged with important responsibilities and that it was not to be narrowly restricted in performing them." *Id.* at 617. After stating that it was not necessary to delineate the precise limits of the commission's power in considering approval or disapproval of the action of the local boards, the court

---

[10] Section 43 establishes the commission. Section 44 states: "The commission shall have general supervision of the conduct of the business of manufacturing, importing, exporting, storing, transporting and selling alcoholic beverages . . . ."

[11] The court's footnote at this point in the *Connolly* quotation is omitted.

went on to enumerate various matters that the commission could take into account besides the applicant's personal fitness. Even as illustratively and nonexhaustively stated by the court, these matters extend to a quite complete examination of the substantive correctness of the award of the license to the particular applicant.[12]

It is scarcely believable that a commission so empowered as to substance is disempowered as to procedural claims that might, as in the present case, go to the integrity of the process by which the local board reached its decision. The statutory power to give or withhold approval contains no such express limit (see note 9 *supra*) and should be read as including a capacity to consider these matters of procedure.[13] Indeed, common law notions of disqualification are so pervasive that they should reach the present case without a meticulous search for statutory foundation, and cases in the field of administrative law

---

[12] The court said (concerning the issue of a package store license to a person holding a drug store license): "It is not necessary to decide in this case what are the precise limits of the authority of the commission in considering the approval or disapproval of the acts of local licensing boards under § 15, but we do hold that such authority at least extends to considering such matters (shown by the record to have been discussed by the commission at its hearing on the application) as (1) the existing patronage by school children and others of the petitioner's drug store; (2) the proximity of churches and schools; (3) the adequacy in the public interest of the drug store license under G. L. (Ter. Ed.) c. 138, § 30A, as appearing in St. 1935, c. 440, § 26, already possessed by the petitioner; and (4) whether this, on all the facts, was a proper instance in which a registered pharmacist might also be given a license under § 15, as is permitted by G. L. (Ted. Ed.) c. 138, § 29, as appearing in St. 1935, c. 440, § 25. See discussion in *Webster* v. *Alcoholic Beverages Control Commission,* 295 Mass. 572, 575-576 [1936]; *Coyne* v. *Alcoholic Beverages Control Commission,* 312 Mass. 224, 228-229 [1942]. On all of these matters, we think the commission cannot be said to have acted unreasonably in the light of the evidence before it, giving due weight to its specialized knowledge of the problems affecting the regulation of the sale of alcoholic beverages." (Footnote omitted.) *Id.* at 617-618.

[13] "An agency's powers are shaped by its organic statute taken as a whole and need not necessarily be traced to specific words." *Commonwealth* v. *Cerveny, ante,* 345, 354 (1977), citing *Warner Cable of Mass. Inc.* v. *Community Antenna Television Comm'n,* 372 Mass. 495, 504-505 & n.17 (1977).

support such a general view. See *Albano* v. *Selectmen of S. Hadley, supra; Daly* v. *Town Plan & Zoning Comm'n of Fairfield,* 150 Conn. 495 (1963); *In re Heirich,* 10 Ill. 2d 357, 384 (1956); *Hochberg* v. *Freehold,* 40 N.J. Super. 276 (1956); *Piggott* v. *Hopewell,* 22 N.J. Super. 106 (1952). Cf. *Hall* v. *Thayer,* 105 Mass. 219, 221 (1870); *Gibson* v. *Berryhill,* 411 U.S. 564 (1973) (disqualifying licensing board members on due process grounds).

We have no precedent under the liquor laws which is squarely decisive of the present question as to the authority of the commission,[14] but it happens that there is helpful precedent in New Jersey where the statutory scheme is comparable.[15] It appears that New Jersey's State director (analogous to our commission) would be held not only empowered but required to quash action of a township committee (analogous to our board of selectmen) which was tainted by interest of a member of the committee. This is the effect of *Township Comm. of Freehold* v. *Gelber,* 26 N.J. Super. 388 (1953), *Paitakis* v. *City Council of New Brunswick,* 126 N.J. Super. 233 (1974), and *W.C. Three, Inc.* v. *Township Comm. of Washington,* 142 N.J. Super. 291 (1976). In the first-cited case the

---

[14] In *Piona* v. *Alcoholic Beverages Control Comm'n,* 332 Mass. 53 (1954), this court held that the commission had erred in failing to allow an appeal from a local board which had omitted to provide a notice required by the statute. "[T]hereby," said the court, "[the commission] countenanced and gave effect to the error which the board had committed." *Id.* at 56. Cf. G. L. c. 30A, § 14 (8) (*d*) (*court may set aside agency action which was "[m]ade upon unlawful procedure"*). In *Boston Licensing Bd.* v. *Alcoholic Beverages Control Comm'n,* 367 Mass. 788, 796-797 (1975), the court did not have to pass on the question whether the commission had an implied duty to insist that the local board meet minimal procedural standards in the promulgation of regulations, similar to the standards required of the commission, because the board had in fact provided adequate opportunity for a hearing.

[15] We note that the New Jersey director has more extensive power than our commission finally to override decisions of the local authorities, but this perhaps makes all the more suitable and important that our commission should be able to insist on fair proceedings by those boards.

718                                    373 Mass. 708

Bd. of Selectmen of Barnstable *v.* Alcoholic Beverages Control Comm'n.

court said in response to a claim of lack of authority of the director, "We cannot attribute to the Legislature a purpose so at variance with the common sense of the situation when the language used is susceptible of a construction in harmony with it." *Id.* at 391-392.

In reaching a negative conclusion as to the commission's authority, the judge of the Superior Court took no note of the factors mentioned above. He suggested that the commission's decision was tantamount to removing Mrs. Montagna, an elected official, from her post on the board. That overstates the case. She was merely considered disqualified in the particular matter; she may act on any liquor matters as to which she is indifferent.[16] (The members of the New Jersey township committees were also elected officials.) We do not think that the commission's competence is tied to G. L. c. 268A, the conflict of interest statute, as the judge indicated citing the amendment of § 23 (*d*) by St. 1975, c. 508. Thus we need not express an opinion on whether violations of that law were involved. In remitting the matter to the board for further proceedings, the commission was taking a prophylactic measure to insure that decisions would be reached fairly and with the appearance of fairness; the commission was not bound to a strict application of the criteria of c. 268A which operates largely to punish officials or to undo completed transactions. Finally, the judge thought the commission's reference to the "appearance" of unfairness invoked too inchoate a standard. The commission spoke of more than "appearance," but as to that, it is suggestive that the Code of Judicial Conduct also deals with appearances. See

---

[16] In the cities the local licensing authorities are appointed, not elected, and the statute disqualifies any from membership who are "engaged, directly or indirectly, in the manufacture or sale of alcoholic beverages." G. L. c. 138, § 4. This shows the legislative concern with disinterested decision. The blanket disqualification of § 4 would not be feasible where selectmen act as the licensing authority; ad hoc disqualification of a particular member, when justified by the facts, then becomes necessary.

S.J.C. Rule 3:25, Canon 2, 359 Mass. 842 (1973); cf. Canon 3(C)(1), 359 Mass. 844 (1973).

3. *Disposition.* Finding procedural irregularity on the part of the local board, the commission took a sound course in remanding to the board for a "second look" as to all applicants without entering on the merits. See *Coyne* v. *Alcoholic Beverages Control Comm'n,* 312 Mass. 224, 227-228 (1942); *W.C. Three, Inc.* v. *Township Comm. of Wash.,* 142 N.J. Super. 291, 295-296 (1976). This seems particularly appropriate in a scheme of license approval where the local board, as we have seen, is given greater responsibility than is usual at the lower tier in a two-tier administrative structure. There is no difficulty in the board's acting effectively on remand. The two disinterested selectmen may act for the board; the situation is not one of "necessity" which might allow Mrs. Montagna's participation despite her interest. See *Graham* v. *McGrail,* 370 Mass. 133, 138 (1976); *Albano* v. *Selectmen of S. Hadley,* 341 Mass. 494, 496 (1960); *Coyne, supra* at 228; *Township Comm. of Freehold* v. *Gelber,* 26 N.J. Super. 388, 393 (1953).

The judgment of the Superior Court is reversed and the commission's decision reinstated.

*So ordered.*