COLONIAL TAVERN, INC. & another[1] vs. BOSTON
LICENSING BOARD & others[2]
(and a companion case).

Suffolk.  May 4, 1981. — August 13, 1981.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, & LYNCH, JJ.

*Boston Licensing Board.  Alcoholic Liquors*, Local licensing authority.

The Boston Licensing Board acted as a local licensing authority, rather
than as a State agency, when it voted to roll back the closing hours of
certain licensees as a condition of their retaining their licenses.
[374-376]

QUESTION OF LAW certified to the Supreme Judicial Court
by the United States Bankruptcy Court for the District of
Massachusetts.

*John Foskett* for the city of Boston & another.

*Mitchell J. Sikora, Jr.*, Assistant Attorney General
(*Gerald J. Caruso*, Assistant Attorney General, with him)
for the Attorney General.

*Edward T. Dangel, III* (*Michael K. Mattchen* with him)
for the plaintiffs.

ABRAMS, J.  The plaintiffs, two corporations holding al-
coholic beverages licenses from the Boston Licensing Board
(board), claim that they sustained $1.5 million damages as a
result of a vote of the board ordering a rollback of the plain-
tiff-licensees' closing times as a condition of retaining their
licenses.  The plaintiff corporations, in the course of volun-
tary bankruptcy proceedings, filed complaints pursuant to

---

[1] Profile Lounges, Inc.

[2] The defendants are the Boston Licensing Board, its members in their
official capacity, and the police commissioner for the city of Boston, in his
official capacity.

42 U.S.C. § 1983 (1976), claiming that the vote of the board violated their civil rights. ,

The defendant police commissioner filed a motion requesting the bankruptcy judge to certify a question of law concerning the legal status of the board under State law. See S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981).[3] The judge allowed the motion and certified a question which, in essence, asks us to determine whether the board's status, in the circumstances of this case, rendered it a local licensing board or a State agency.[4]

The following statement of facts was submitted with the certified question. The plaintiffs are licensed night club operators in Boston's Bay Village area. On January 28, 1976,

___

[3] Rule 1:03 of the Supreme Judicial Court provides, in pertinent part: "Section 1. . . . This court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or of the District of Columbia, or a United States District Court, or the highest appellate court of any other State when requested by the certifying court if there are involved in any proceeding before it questions of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court. Section 2. . . . This rule may be invoked by an order of any of the courts referred to in Section 1 upon that court's own motion or upon the motion of any party to the cause."

Although the rule does not expressly authorize the certification of questions from the Bankruptcy Court, we interpret our rule as broad enough to include certification of questions from that court.

[4] The precise question was stated as follows: "Are the Licensing Board for the City of Boston and its members named as defendants in their official capacities, and when sued pursuant to 42 U.S.C. Section 1983 for damages resulting from their official acts, a) an agency of the City of Boston (such that its treasury would be liable to pay a judgment against the Board); b) an agency of the Commonwealth of Massachusetts (such that its treasury would be liable to pay any such judgment); c) an independant governmental body (such that it can be directly liable to pay a judgment rendered against it); and if the Board is neither a city, a state nor an independant agency for such purposes, what is its status, and what body or treasury is liable to pay a judgment against the Board?"

Generally, questions certified to us have been phrased so that they may be answered either "yes," or "no." See *Vieira* v. *Schupp*, 383 Mass. 739, 740 (1981); *Jesionek* v. *Massachusetts Port Auth.*, 376 Mass. 101, 102 (1978); *Feeney* v. *Commonwealth*, 373 Mass. 359, 362-363 (1977).

the board voted to roll back the plaintiff-licensees' closing times, as a condition of the alcoholic beverage license held by each. The plaintiffs assert that the governmental officials involved violated their constitutional rights, thereby creating a cause of action under 42 U.S.C. § 1983 (1976).[5] As trial approached, counsel for the city declined to represent the board on the ground that the board was a State agency for purposes of the § 1983 damage action. The Attorney General also declined to represent the board because he believes that, for the purpose of these § 1983 actions, the board acted as a local board.[6]

The question raised, as we interpret it, is, did the board act as a local licensing board, as opposed to a State agency, when it voted to roll back the closing hours of particular persons holding licenses from the board?[7] We answer the question in the affirmative.

The board was created by St. 1906, c. 291, §§ 1-6. Under the statute, the board's functions and responsibilities are

---

[5] The complaint alleges that the board's action rolling back the closing hour from 2 A.M. to midnight was arbitrary and that the plaintiffs were denied due process and equal protection of the laws. The plaintiffs allege that the board's action was the result of pressure and intimidation from a small segment of the community and from certain individual defendants, motivated by personal malice toward the plaintiffs.

[6] The Attorney General also declined to represent the board because he represents the Alcoholic Beverages Control Commission, which has overruled local boards on occasions. See, e.g., *Selectmen of Barnstable* v. *Alcoholic Beverages Control Comm'n*, 373 Mass. 708, 709 (1977); *Boston Licensing Bd.* v. *Alcoholic Beverages Control Comm'n*, 367 Mass. 788, 790 (1975); *Largess* v. *Nore's, Inc.*, 341 Mass. 438, 439 (1960); *Webster* v. *Alcoholic Beverages Control Comm'n*, 295 Mass. 572, 573 (1936).

[7] None of the parties has questioned whether the issue certified to us is determinative of issues pending in the certifying court. In his accompanying memorandum, the Bankruptcy Court judge states that "[t]he question of the Board's status appears to affect liability issues 'determinative of the cause . . . pending.'" S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981). For the purposes of this case, we accept the judge's determination as fitting within our rule.

Briefs were submitted on the certified question from the plaintiffs (Colonial Tavern, Inc., and Profile Lounges, Inc.), the city of Boston and the defendant police commissioner (Robert DeGrazia, at the time of the acts alleged), and the Attorney General.

essentially local. Its members, although appointed by the Governor, must live in Boston. St. 1906, c. 291, § 1. The statute places on the board duties similar to those imposed on all local licensing boards by the general liquor control statute. See G. L. c. 138.

General Laws c. 138, § 1, defines "local licensing authorities" as including any board "established in any city or town under special statute." In Massachusetts, the regulation of alcoholic beverages and the licensing of establishments are, for the most part, matters of local concern. The board's authority and jurisdiction are limited to the city of Boston, St. 1906, c. 291, § 4, and the board may set the closing hours for individual establishments within statutory limits. See *Casa Loma, Inc.* v. *Alcoholic Beverages Control Comm'n*, 377 Mass. 231, 234 (1979); *Boston Licensing Bd.* v. *Alcoholic Beverages Control Comm'n*, 367 Mass. 788, 794 (1975). In particular, G. L. c. 138, § 12, provides that "[t]he hours during which sales of such alcoholic beverages may be made by any licensee as aforesaid shall be fixed by the local licensing authorities either generally or specifically for each licensee." The board purported to act pursuant to this authority when it rolled back the closing hours of the plaintiffs' establishments. Thus, under both the board's enabling statute and the pertinent provisions of G. L. c. 138, the board functions as a city agency.

The board, like most local licensing boards, is not subject to the provisions of the State Administrative Procedure Act, G. L. c. 30A. *Saxon Coffee Shop, Inc.* v. *Boston Licensing Bd.*, 380 Mass. 919, 922-923 (1980). *United Food Corp.* v. *Alcoholic Beverages Control Comm'n*, 375 Mass. 238, 242 (1978). *Boston Licensing Bd.* v. *Alcoholic Beverages Control Comm'n*, 367 Mass. 788, 796 (1975). *Dixie's Bar, Inc.* v. *Boston Licensing Bd.*, 357 Mass. 699, 702 (1970). Although the board may "modify, suspend, revoke or cancel" a license, see G. L. c. 138, § 64, these actions are subject to review by the Alcoholic Beverages Control Commission. G. L. c. 138, §§ 24, 67. This "strongly suggests that . . . the board operates as a city body." *Dixie's Bar, Inc.* v. *Boston Licensing Bd., supra* at 702.

We are buttressed in our conclusion by the fiscal aspects of the board's status. All license fees collected by the board are paid into the city treasury, St. 1906, c. 291, § 4, and become property of the city. See *Boston* v. *Epple*, 221 Mass. 395, 399 (1915). Further, all salaries, staff expenses, office rent, and "all incidental expenses incurred by the board in the performance of its duties and the exercise of its powers" are paid by the city. St. 1906, c. 291, §§ 2, 3.

The fact that the Governor appoints the members of the board does not warrant a conclusion that the board acts as a State agency. A roll back in hours is a matter of local concern entrusted to the board by statute. We do not believe that the mere fact that the board members are appointed by the Governor alters the status of the board, or the nature of the agency action.

In answer to the certified question, we conclude that the board, in its vote of January 28, 1976, rolling back the plaintiffs' closing times, acted as a local licensing board. The Reporter of Decisions is to furnish attested copies of this opinion to the clerk of this court. The clerk in turn will transmit one copy, under the seal of this court, to the clerk of the United States Bankruptcy Court for the District of Massachusetts, as answer to the question certified, and will also transmit a copy to each party.

*So ordered.*