FILOMENO TREGLIA & another[1] *vs.* JAMES G. MACDONALD, trustee.[2]

Suffolk. September 9, 1999. - October 7, 1999.

Present: ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Judgment,* Default, Preclusive effect. *Collateral Estoppel.*

A default judgment in the Superior Court on a fraud claim that was not actually litigated did not have preclusive effect in a subsequent bankruptcy action in which the same claim was raised between the same parties. [240-242]

CERTIFICATION of a question of law to the Supreme Judicial Court by the United States Bankruptcy Appellate Panel for the First Circuit.

*Robert O. Berger* for the plaintiff.

*Jonathon D. Friedmann* for the defendant.

MARSHALL, J. The United States Bankruptcy Appellate Panel for the First Circuit (bankruptcy appellate panel) has certified a question to this court. See S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981). The question concerns the preclusive effect of a default judgment obtained in the Superior Court in a subsequent bankruptcy proceeding:

> "When a defendant appears in a civil action, files a motion seeking interlocutory relief, obtains that relief, but does not thereafter answer or defend; and when, after a damage hearing (in which the defendant does not participate), default judgment enters; does Massachusetts law preclude the defendant's litigation of the substantive elements underlying the default judgment in a subsequent action initiated by the same plaintiffs?"

We answer the question in the negative.

[1] Virginia Treglia.

[2] Of the MacDonald Realty Trust, as well as individually.

## I

We summarize the relevant facts. See S.J.C. Rule 1:03, § 3 (2). In January, 1990, Filomeno and Virginia Treglia filed a complaint in the Middlesex Superior Court against James G. MacDonald. The Treglias alleged breach of contract and fraud in connection with an extension of credit relating to the sale by the Treglias of their two-family home in Waltham to MacDonald. As part of the consideration for the sale, MacDonald gave the Treglias a promissory note in the amount of $75,000, secured by a second mortgage on real property MacDonald owned at a different location in Waltham. When MacDonald failed to make principal and interest payments on the promissory note, the Treglias brought suit. In the second count of their complaint the Treglias alleged that MacDonald had made false representations to them concerning the value of the second property, and that they were fraudulently induced into accepting the promissory note from him.

The Treglias simultaneously filed an ex parte motion for attachment of real estate that was allowed the same day by a judge in the Superior Court in the amount of $85,000. Approximately four months later, the Treglias served the complaint and writ of attachment on MacDonald. In response, MacDonald promptly filed a motion to modify and discharge the attachment order that was allowed without opposition. A second such motion filed by MacDonald was also allowed several months later.[3] Neither MacDonald nor his counsel participated in any other respect in the Superior Court action. MacDonald did not answer the complaint and, in July, 1990, a default judgment was entered against him. In February, 1991, a judge in the Superior Court conducted a hearing on the assessment of damages sought by the Treglias. MacDonald did not participate in that hearing and, the next day, the judge entered judgment for the Treglias in the amount of $94,365.15 on their fraud claim against MacDonald. The Treglias also obtained a judgment on their contract claim. The judge apparently was not asked to, and did not, make any findings.

In October, 1991, MacDonald filed a voluntary petition for bankruptcy protection in the bankruptcy court pursuant to

---

[3]The record does not contain the terms of these orders. At oral argument before this court, counsel for MacDonald represented that the first motion sought a partial dissolution of the attachment on one or more properties and that the second motion sought a similar modification.

Chapter 7 of the Bankruptcy Code. See 11 U.S.C. § 727 (1994). The Treglias then filed an adversary action claiming that Mac-Donald's obligation to them under the fraud count of the default judgment was excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).[4] They contended that under Massachusetts law of collateral estoppel, they were entitled to judgment as a matter of law. The judge in the bankruptcy court rejected that claim and, proceeding to the merits, found that the Treglias had failed to sustain their burden of proof on their fraud claim. She entered judgment for MacDonald, dismissing the adversary proceeding. The Treglias took an appeal to the bankruptcy appellate panel. Determining that Massachusetts law on the point was not settled, on its own motion the bankruptcy appellate panel certified its question to this court. S.J.C. Rule 1:03.

## II

The bankruptcy appellate panel is not listed among the courts from which we accept certified questions. See S.J.C. Rule 1:03, § 1. We nevertheless conclude that we may answer the certified question. Bankruptcy appellate panels were created on July 10, 1984, pursuant to 98 Stat. 341 (1984), codified at 28 U.S.C. § 158(b) and (c) (1994), after the adoption of S.J.C. Rule 1:03, § 1.[5] The power of the bankruptcy appellate panel to decide bankruptcy appeals is premised on express authority granted to it by the United States Court of Appeals for the First Circuit. See 28 U.S.C. § 158(b)(1). As noted by the bankruptcy appellate panel in its certification to us, that panel is the "functional equivalent" of a United States District Court in hearing

---

[4]Title 11 U.S.C. § 523(a)(2)(A) (1994 & Supp. III 1997) provides:

"(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . .

"(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —

"(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ."

[5]Supreme Judicial Court Rule 3:21, § 1, as appearing in 359 Mass. 790 (1971), adopted on October 29, 1971, effective November 1, 1971. On June 26, 1980, the Justices ordered the Rules of the Supreme Judicial Court reorganized and amended. Rule 3:21, § 1, is now Rule 1:03, § 1. See 382 Mass. 698 (1981).

bankruptcy appeals. See 28 U.S.C. § 158(c). Acting as the intermediate appellate court in bankruptcy matters, the United States District Court for the District of Massachusetts has certified questions to this court that we have answered. See *Dwyer v. Cempellin,* 424 Mass. 26 (1996). See also *Colonial Tavern, Inc. v. Boston Licensing Bd.,* 384 Mass. 372, 373 n.3 (1981) (although S.J.C. Rule 1:03 does not "expressly" authorize certification of questions from bankruptcy court, rule is "broad enough to include certification of questions from that court"). We will answer the question.

The Treglias invoke the principle of collateral estoppel as developed under Massachusetts law to support their contention that the bankruptcy court should not have permitted MacDonald to relitigate the issue of fraud in that court.[6] We have held that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Martin v. Ring,* 401 Mass. 59, 61 (1987), quoting *Fireside Motors, Inc. v. Nissan Motor Corp. in U.S.A.,* 395 Mass. 366, 372 (1985). We observed in that case that the aim of the doctrine of collateral estoppel is "to conserve judicial resources, to prevent the unnecessary costs associated with multiple litigation, and to ensure the finality of judgments." *Martin v. Ring, supra.* We have not, however, squarely decided whether a default judgment is entitled to the same preclusive effect as any other judgment. In *Martin v. Ring, supra,* we noted

---

[6]Collateral estoppel principles apply in proceedings to determine the dischargeability of a debt under 11 U.S.C. § 523(a). See *Grogan v. Garner,* 498 U.S. 279, 284-285 n.11 (1991). Most courts agree that under the full faith and credit statute, 28 U.S.C. § 1738 (1994), the preclusive effect of a State court judgment in a subsequent nondischargeability proceeding under Federal bankruptcy law is governed by the collateral estoppel law of the State from which the judgment is rendered, as the bankruptcy appellate panel concluded here. See, e.g., *In re Nourbakhsh,* 67 F.3d 798, 800-801 (9th Cir. 1995) (holding that Florida collateral estoppel law, not Federal collateral estoppel law, controls); *In re Bursack,* 65 F.3d 51, 53 (6th Cir. 1995), quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984) (noting that "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered"). But see *In re Wald,* 208 B.R. 516, 520 (Bankr. N.D. Ala. 1997) (applying Federal rather than State law of collateral estoppel to determine if State court default judgment should be given preclusive effect in dischargeability case).

that the "guiding principle" in determining whether to allow a party the use of collateral estoppel is whether the party against whom it is asserted had a "full and fair opportunity to litigate the issue in the first action or [whether] other circumstances justify affording him an opportunity to relitigate the issue." *Id.* at 62, quoting Restatement (Second) of Judgments § 29 (1982). The Treglias assert that MacDonald had a "full and fair" opportunity to litigate the question of fraud in the Superior Court and, having obtained a valid and final judgment on their fraud claim in that court, they should not be required to relitigate the fraud issue.

It is generally held that a default judgment does not have preclusive effect on an issue in a subsequent action because the issues have not been actually litigated. See Restatement (Second) of Judgments § 27 comment e, at 257 (1982) ("In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated"). See also 18 C.A. Wright, A.R. Miller, & E.H. Cooper, Federal Practice and Procedure § 4442, at 373 (1981) ("[j]udgment by default in the technical sense that the issues have not been litigated does not warrant issue preclusion for the very reason that the issues have not been litigated or decided"). Commenting on whether an issue has been "actually litigated," the drafters of the Restatement noted that not every judgment is conclusive in a subsequent action even as to issues "which might have been but were not litigated and determined in the prior action." Restatement (Second) of Judgments, *supra* at § 27 comment e, at 256. The drafters also noted that it is sometimes difficult to determine whether an issue has been "actually litigated," and that in some circumstances "even if it was not litigated, the party's reasons for not litigating in the prior action may be such that preclusion would be appropriate." *Id.* It was this aspect of the proceedings in the Superior Court that appeared to give rise to the uncertainty under Massachusetts law expressed by the bankruptcy appellate panel. The panel noted that "[w]ere this a simple no-appearance, no answer default" it would affirm the ruling of the judge in the bankruptcy court. However, because MacDonald "did indeed appear and participate in the State court proceedings before he was defaulted," the panel was less certain of the application of Massachusetts law to this case.

We reaffirm that preclusive effect should not be given to issues or claims that were not actually litigated in a prior action.

*Martin* v. *Ring, supra* at 61. We also recognize, for much the same policy reasons expressed by the drafters of the Restatement, that generally in the case of a judgment entered by default, none of the issues is actually litigated or decided. See Restatement (Second) of Judgments, *supra* at § 27 comment e, at 256-257. Cf. *Martin* v. *Ring, supra* at 62-63 ("record demonstrates that the causation issue was one fully litigated and essential to the findings of the board"). In this case, the Treglias obtained their attachment on MacDonald's property without MacDonald's having an opportunity to be heard. When notified of the attachment, MacDonald sought successfully to modify and discharge it. He did not otherwise attempt to defend himself from the fraud charges made by the Treglias against him.[7] While he filed an appearance in the Superior Court, there is nothing to suggest that the issue of fraud or any other issue of liability was "fully litigated." We agree with the judge in the bankruptcy court that the judge in the Superior Court "received evidence only as to the amount of damages. As to liability, the court received no evidence and made no findings of fact or conclusions of law." On this record, we cannot conclude that the issue of fraud raised by the Treglias was "actually litigated" in the Superior Court.

We caution that, even in the case of a judgment entered by default, there may be some circumstances in which an issue may be given preclusive effect in subsequent litigation between the same parties. We can, for example, envision circumstances in which a litigant may so utilize our court system in pretrial procedures, but nonetheless be defaulted for some reason, that the principle and rationale behind collateral estoppel would apply. See, e.g., *Matter of Gober*, 100 F.3d 1195 (5th Cir. 1996) (holding that default judgment based on failure to answer does not support issue preclusion but where default issued as discovery sanction against defendant debtor after two years of litigation in which defendant had answered and denied all allegations of complaint, collateral estoppel applied); *In re Bush*, 62 F.3d 1319, 1324 (11th Cir. 1995) (applying collateral estoppel effect to prior default judgment against debtor based on fraud, where debtor "actively participated" in adversary process

---

[7]The record does not establish why MacDonald chose not to contest the Treglias' assertion of fraud in the Superior Court. In light of his subsequent invocation of the protection of the bankruptcy court, MacDonald may have sought to conserve both his own resources and judicial resources by a single proceeding in the bankruptcy court.

for almost one year through filing answer, counterclaim, and discovery requests). We need not specify here the circumstances in which our general rule would not be applicable, because the facts of this case fully support the decision of the judge of the bankruptcy court that the application of collateral estoppel is not appropriate to the Treglias' claim of fraud.

For the reasons stated, we answer the question certified in the negative.