Fabricant, J.
INTRODUCTION
This action arises from efforts of the plaintiff, Nancy Matza (“Nancy”), to collect on a lapsed policy of insurance on the life of her deceased husband, Brian Matza (“Brian”). Her three-count complaint alleges negligence by insurance agent Charles Grant (“Grant”) in failing to notify her of unpaid premiums on the policy, and vicarious liability of his principals. Nancy has obtained judgment by default against Grant. Presently before the Court are the motion for summary judgment of the remaining two defendants, Protective Life Insurance Co. (“Protective Life”) and Allmerica Financial Life Insurance and Annuity Company (“Allmerica”), along with Nancy’s cross motion for summary judgment against those defendants. For the reasons that will be explained, the defendants’ motion will be allowed, and the plaintiffs motion will be denied.
BACKGROUND
The record establishes the following facts as undisputed.[1] On April 18, 1990, State Mutual Life Assurance Company (“SMA”) issued a term life insurance policy, number L494642, in the amount of $215,000, on the life of Brian Matza (“the policy”). Brian purchased the policy through SMA’s agent, Charles Grant. Grant was a long-time friend of the Matzas, on whom they had relied for advice and informátion about insurance policies. Brian named his wife Nancy as beneficiary, and thereafter transferred ownership of the policy to her.
The policy expressly provided that the “payments to the company to keep the policy in force are the premiums.” The policy set out an annual premium schedule for the duration of the policy, and provided a grace period of thirty-one days after each premium due date. The policy further provided that any premium not paid within the grace period “is in default,” and that “[a] lapse occurs if the premium remains unpaid at the end of the 31-day grace period.”
On October 1, 1995, SMA changed its name to Allmerica Financial Life Insurance and Annuity Company. On January 1, 1996, Allmerica and Protective Life entered into an agreement by which Protective Life assumed service and administration responsibilities for the policy beginning January 1, 1996.
The premiums were paid from 1990 through 1996. During 1996, Protective Life sent quarterly premium notices to both Brian and Nancy, at the addresses in its records, as follows: Brian Matza, 37 Ambertwood Drive, Winchester, Massachusetts, 01890-2232; Nancy Matza, P.O. Box 2368, Woburn, Massachusetts, 01888-0668. Except for the erroneous insertion of a “t” in the middle of the street name, the Winchester address matches the address Brian gave on his application for the policy, and is where both Brian and Nancy lived from April 1985 until November 2000, when they moved to Wayland. As to the Woburn address, Nancy asserts in her affidavit that she does not recognize it, and that while living in Winchester, she rented a post office box in Stoneham for business purposes.
On December 30, 1996, Protective Life sent the Matzas, at the same two addresses as before, a notice of the next premium, due on January 18, 1997. Protective Life’s first notices at that time stated, “TO ENSURE YOUR POLICY STAYS IN FULL FORCE, YOUR PAYMENTS SHOULD BE RECEIVED BY [the date of the end of the grace period].” The due date passed without payment. Protective Life sent a reminder notice on February 7, 1997, to the same two addresses. Protective Life’s reminder notices at that time stated that the premium must be paid by the end of the grace period, and that “IF WE DO NOT RECEIVE YOUR PREMIUM BY THEN, YOUR POLICY WILL LAPSE.”
The Post Office returned to Protective Life the reminder notice addressed to Nancy at the Woburn address. Protective life searched available databases for a new address for Nancy, without success. It then entered a “search end” into its records to prevent further mailings to the Woburn address. The reminder notice addressed to Brian at the Winchester address was not returned. The premium remained unpaid.
On February 27, 1997, Protective Life sent a final notice to the Winchester address stating, “YOUR GRACE PERIOD HAS EXPIRED! COVERAGE IS NO LONGER IN FORCE!” The notice offered to reinstate the policy if payment was made in twenty days. No payment occurred.
*566 Each premium notice included a request for change of address information. Neither Brian nor Nancy ever contacted Protective Life to notify it of a change of address with respect to the policy. The record does, however, include a letter from Nancy to Allmerica, dated April 22, 1999, requesting that bills for another policy on Brian’s life be sent to her at P.O. Box 31 in Stoneham. Also included in the record is correspondence to her from Allmerica, regarding that other policy, directed to the Stoneham address, dated January 18, 2000, and December 8, 2000.
Brian died in July 2001. Allmerica paid Nancy a death benefit under the other policy, which had lapsed and been reinstated twice between June 1996 and January 2001. On February 15,2002, Nancy, through her attorney, inquired about the policy in issue here. Protective Life responded with documentation demonstrating that the policy had lapsed in 1997 due to unpaid premiums.
Nancy brought this action on April 23, 2003, naming Grant, Allmerica, and Protective Life. The complaint alleges that Grant “negligently and carelessly failed to timely notify plaintiff or her deceased husband, Brian Matza, of their failure to pay the premium in a timely manner, or of the lapse of the Policy for nonpayment.” As to each of the two corporate defendants, the complaint alleges that Grant was its agent, and that it is vicariously responsible for his negligence. Grant failed to answer the complaint, and default judgment entered against him on January 14, 2004.
Allmerica and Protective Life now move for summaryjudgment, on the ground, among others, that the action is time-barred by G.L.c. 175, §110B. Nancy opposes their motion, and cross-moves for summary judgment against them on the theory that the default judgment against Grant establishes their vicarious liability.
DISCUSSION
This Court grants summary judgment where there are no genuine issues of material fact and the record entitles the moving party to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of establishing that there is no dispute of material fact on every relevant issue. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a genuine dispute of material fact for trial either by submitting affirmative evidence negating an essential element of the non-moving party’s case, or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue by either of these methods, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. See Pederson, 404 Mass, at 17. The opposing party may not rest on the allegations of the pleadings. See Key Capital Corp. v. M&S Liquidating Corp., 27 Mass.App.Ct. 721, 728 (1989). Mere contradictions of factual allegations, without evidentiary support, are insufficient to raise questions of material fact sufficient to defeat a summary judgment motion. See Madsen v. Erwin, 395 Mass. 715, 721 (1985). The opposing party’s obligation, rather, is to demonstrate the existence of admissible evidence sufficient to meet the burden of proof on the issues raised by the motion.
1. The Statutory Time-Bar
General Laws c. 175, §110B, governs the lapse of life insurance policies for non-payment of premiums. The statute imposes on insurers specific requirements of notice prior to lapse; the undisputed facts establish that defendants here complied with those requirements. The statute goes on to provide as follows:
No action shall be maintained on any policy to which this section applies and which has lapsed for nonpayment of any premium unless such action is commenced within two years from the due date of such premium.
Defendants contend that this provision constitutes a statute of repose, cutting off all claims two years after non-payment, regardless of when or whether a cause of action has accrued. Since the unpaid premium on the policy was due in January of 1997, defendants argue, the claim was barred as of January of 1999, more than four years before the plaintiff sued. The Court agrees.
“A statute of repose places an absolute outer time limit on the bringing of an action without relation to the accrual of the cause of action. It begins to run from a definite time,... and continues for a specified period of time . . . ; if the action is not brought within this period, itis barred.” 14C Mass. Prac. Summary of Basic Law §20.247 (3d ed.). The effect of a statute of repose is to abolish a plaintiffs cause of action thereafter, “even if the plaintiffs injury does not occur, or is not discovered, until after the statute’s time limit has expired.” Nett v. Bellucci, 437 Mass. 630, 635 (2002), citing McGuinness v. Cotter, 412 Mass. 617, 622 (1992). Courts recognize the severe consequences of statutes of repose, which abolish a plaintiffs cause of action without providing an alternative remedy. Despite the harsh result, courts uphold statutes of repose as long as they are “rationally related” to the legislative objective. See Klein v. Catalano, 386 Mass. 701, 712 (1982), citing Opinion of the Justices, 309 Mass. 571, 599 (1941).
Interpretation of G.L.c. 175, §110B, like any other statute, must be based on its plain terms, considered *567 in light of the apparent legislative purpose. See Klein v. Catalano, 386 Mass, at 705. The language of the statute is clear on its face: “no action shall be maintained on any policy” unless brought within two years of the premium due date. The triggering event set by the legislature is definite. The premium due date starts the clock, regardless of whether any injury has occurred or been discovered. In this respect, the statute follows the model of a statute of repose. See id. at 702.
The legislative rationale behind such a provision is plainly apparent. A cause of action based on a lapsed life insurance policy would not accrue until the insured has died, and the beneficiary has discovered the lapse. That event may occur decades after the lapse, “when evidence has been lost, memories have faded, and witnesses have disappeared.” Klein v. Catalano, 386 Mass, at 709, citing Rosenberg v. North Bergen, 61 N.J. 190, 201 (1972). A statute of repose for such claims negates the possibility of a “never-ending date on which a cause of action can ‘accrue.’ ” Nett v. Belluci, 437 Mass, at 639, citing Harflinger v. Martin, 435 Mass. 38, 41-42 (2001). Such a limitation strikes a balance between the public’s right to a remedy and the need to assure a defendant that he may be “secure in his reasonable expectation that the slate has been wiped clean of ancient obligations.” Klein v. Catalano, 386 Mass, at 709, 710.
Nancy argues that c. 175, §110B is not a statute of repose because it does not contain both a limitations period and a repose period. She points in contrast to G.L.c. 260, §2B, the statute construed in Klein v. Catalano, regarding tort claims against architects and contractors arising from defects in buildings, as well as to G.L.c. 231, §60D, regarding medical malpractice claims. Both the cited statutes address personal injuiy claims, which are normally subject to the three-year limitations period for tort claims under G.L.c. 260, §2A. Both statutes establish repose periods longer than three years. Thus, in each case, reference in the repose statute to the three-year limitation period is necessary to avoid the implication that the repose statute lengthens the otherwise applicable limitations period. No such necessity appears here, where the two-year bar under the statute is shorter than the limitation period that would otherwise apply for an action in either contract or tort. See, e.g., Homer v. Town of Yarmouth, 40 Mass.App.Ct. 916, 918 (1996) (construing G.L.c. 60, §80(c) as a statute of repose, despite absence of any limitations language). Compare Post v. Belmont Country Club, 60 Mass.App. 645, 653 (2004) (construing G.L.c. 197, §9, as statute of limitation rather than repose based on comparison of statutory language with c. 260, §2B, and c. 231, §60D, and prior case law under c. 197, §9).
Nancy next argues that her claim falls outside the statutory provision, even if it is one of repose, because her suit is not one “on the policy.” She reads that language as limited to contract actions, and characterizes hers as an action in tort. Her theory, if allowed to prevail, would render the statute effectively null, since every clever pleader could find a way around it by casting the complaint in the language of negligence. See McDonough v. Marr Scaffolding Co., 412 Mass. 636, 642-43 (1992) (“To allow plaintiffs to recast their negligence claim in the form of a warranty claim in order to circumvent the operation of the repose statute would nullify the purpose of the repose provision altogether”); Anthony’s Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc., 396 Mass. 818, 823 (1986), quoting Hendrickson v. Sears, 365 Mass. 83, 85 (1974) (“The court must look to the ‘gist of the action’ ”); Pagliuca v. City of Boston, 35 Mass.App.Ct. 820, 823 (1994) (determining applicable limitations period based on “gravamen of the complaint” rather than its characterization as tort or contract). Unlike c. 260, §2B, which expressly limits its scope to actions “of tort,” c. 175, §110B dictates that “no action” shall be maintained “on any policy.” This language bars any action based on a life insurance policy, whether cast as contract, tort, or otherwise. Nancy’s action, while cloaked in the language of tort, is indisputably based on the policy.
Finally, Nancy asserts that “the Sullivan case [Protective Life Insurance Company v. Sullivan, 425 Mass. 615, 635 (1997)] recognizes the potential that defendants will be precluded from asserting the limitation bar due to principles of equitable tolling (or, alternatively stated, equitable estoppel).” She identifies no facts from which any estoppel might arise, and the record provides none. Nothing in the facts presented indicates that Nancy’s delay in bringing suit resulted from reliance on any conduct of the defendants.
2. Grant’s Default
Nancy argues that Grant’s default establishes as against the remaining defendants both his liability and his agency relationship with them, so that their vicarious liability follows. She offers no authority for this novel and startling theory. Grant’s default establishes the facts pled in the complaint for purposes of this action as to him, but not as to anyone else.[2] The defendants now before the Court are entitled to defend themselves.[3] No preclusion arising from Grant’s default applies to them.
3. Rule 56(f).
Nancy argues that summary judgment is inappropriate under Rule 56(f) because she has noticed depositions of defendants “which are designed to elicit further information as to liability.” Her counsel’s affidavit explains that such discovery “would provide us with additional information to demonstrate that the agent was negligent in failing to alert the plaintiff of the lapse of the Policy in question, and that the insurers who were the agent’s principals — the two defendant insurers — were vicariously liable for the agent’s negligence.” The proposed discovery, as *568 described by the plaintiff, would not address the sole issue on which summary judgment is based — that is, the application of G.L.c. 175, §10B. Accordingly, summary judgment is appropriate at this time, without further discovery. See Commonwealth v. Fall River Motor Sales, Inc., 409 Mass. 302, 308 (1991) (“One common reason for the denial of a continuance in this context is the irrelevance of further discovery to the issue being adjudicated in summary judgment”).
CONCLUSION AND ORDER
For the reasons stated, the Defendant’s Motion for Summary Judgment is ALLOWED and the Plaintiffs Cross Motion for Summary Judgment is DENIED.

The facts derive from the parties’ statements pursuant to Superior Court Rule 9A(b)(5), as supported by affidavits, appended exhibits, and the pleadings.

Even as to Grant, default judgment “does not have preclusive effect on an issue in a subsequent action because the issues have not been actually litigated.” Treglia v. MacDonald, 430 Mass. 237, 241 (1999).

Nancy suggests that these defendants could have protected their interests by defending Grant. She cites no contract or other source that would have given them authority to do so.