NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1133

ALLURE DESIGN LANDSCAPE ARCHITECTS CONSTRUCTION SERVICES, INC.

vs.

GINA VOLANDRE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Allure Design Landscape Architects Construction Services, Inc. (Allure), filed a complaint asserting eight counts of breach of contract against the defendant, Gina Volandre.  On cross motions for summary judgment, a judge of the Superior Court (motion judge) concluded that Allure's claims were barred by the doctrine of collateral estoppel.  While we conclude that Allure's claims were not barred by the doctrine of collateral estoppel, we nonetheless affirm the summary judgment for Volandre on the basis that there were no genuine issues of material fact.

Background.  The following facts are undisputed.  In 2015, the president of Allure, Paul Kauranen, began a dating

relationship with Volandre. While they were dating, Kauranen started living at Volandre's home. Kauranen did not pay rent. However, through Allure or subcontractors, he performed extensive landscaping and masonry work at Volandre's home, including the installation of a swimming pool. Around the same time that Kauranen was performing work on Volandre's home, he committed numerous acts of larceny against other individuals. In 2018, he pleaded guilty to those charges arising from those acts, was sentenced to time in prison, and was ordered to pay $633,000 in restitution to his victims.

Meanwhile, in 2017, one of Kauranen's victims, Nathan Pham, brought a civil action against Allure, Kauranen, and, as a reach and apply defendant, Volandre. Allure and Kauranen defaulted. The action proceeded against Volandre on allegations that Kauranen fraudulently transferred assets -- including his labor, shrubbery, and the pool -- to Volandre. Following a bench trial, a Superior Court judge (trial judge) found that Kauranen and Volandre "provided money and items to each other as part of an exchange between romantic partners, not with the intent of hindering, delaying or defrauding any creditor of . . . Kauranen" and that, for a variety of additional reasons, Pham did not prevail on his reach and apply claim against Volandre.

2

Then, in 2020, Allure brought this action.  Allure alleged that Volandre entered into eight different contracts with Allure under which she agreed to pay Allure for the landscaping and masonry work performed at her home.  Allure further alleged that Volandre owed Allure $629,580 under those contracts.  Volandre denied these allegations by maintaining she had never contracted or retained Kauranen for such services, that Kauranen sought to enhance her property for his personal reasons, and that he gifted the work to her.

As noted, a summary judgment entered in favor of Volandre in this action on the basis of collateral estoppel.  The motion judge noted that the judgment in the Pham action was based on a finding that Kauranen gifted the work to Volandre.  The motion judge concluded that the "issue ha[d] been decided."

Discussion.  1.  Collateral estoppel.  Under the doctrine of collateral estoppel, a party may not relitigate an issue where

> "(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; (3) the issue in the prior adjudication was identical to the issue in the current adjudication; and (4) the issue was essential to the earlier judgment, and was actually litigated in the prior action" (quotations and citation omitted).

Abdulky v. Lubin & Meyer, P.C., 102 Mass. App. Ct. 441, 446 (2023).  Moreover, the party against whom preclusion is asserted

3

"must have had a full and fair opportunity to litigate the issue" (citation omitted). Id.

Here, the summary judgment record did not establish that Allure had a full and fair opportunity to litigate whether Kauranen gifted the landscaping and masonry work to Volandre in the Pham action. On summary judgment, it was undisputed that Allure and Kauranen defaulted in the Pham action. See Treglia v. MacDonald, 430 Mass. 237, 241-242 (1999) (preclusive effect generally not given to judgments entered by default). After Allure and Kauranen defaulted, they had a limited role in the case. As Allure's attorney represented to the motion judge on summary judgment, Kauranen appeared as a witness in the Pham action, but the trial judge "did not allow [Kauranen's attorney] to object to questions, did not allow [Kauranen's attorney] to speak to [Kauranen], and did not allow [Kauranen's attorney] to cross-examine . . . Kauranen to bring out the true story."[1] On

---

[1] On summary judgment, Allure did not submit a copy of the Pham trial transcript and instead relied on his attorney's representations regarding what happened during that trial. However, the same attorney who represented Allure in this action also represented Allure and Kauranen in the Pham action. The attorney's representations therefore concerned matters that he experienced firsthand, and Volandre did not dispute the accuracy of those representations. On appeal, Allure did include a copy of the Pham trial transcript as part of the appendix, which Volandre moved to strike. We need not rule on Volandre's motion, as we do not rely on anything in the Pham trial transcript.

4

this record, Volandre did not establish, as was her burden, that Allure had a full and fair opportunity to litigate the issue. See TLT Constr. Corp. v. A. Anthony Tappe & Assocs., 48 Mass. App. Ct. 1, 5 (1999) (party moving for summary judgment on basis of issue preclusion bears burden of establishing that it applies).

2. Merits. We nonetheless affirm the summary judgment on the merits. "Summary judgment is appropriate where there is no material issue of fact in dispute and the moving party is entitled to judgment as a matter of law" (citation omitted). Adams v. Schneider Elec. USA, 492 Mass. 271, 280 (2023). While we construe the evidence "in the light most favorable to the party against whom summary judgment entered," id., a party cannot manufacture a dispute through contradictory, self-serving statements made in sham affidavits, see Benvenuto v. 204 Hanover, LLC, 97 Mass. App. Ct. 140, 144 (2020).

At his deposition, Kauranen testified as follows. On his second date with Volandre, they discussed pricing for some landscaping work, but Kauranen never provided a written estimate for the work. After completing the work, Kauranen gave Volandre an invoice, which she did not pay. Over the next two to three years, Kauranen continued to work on seven other projects at Volandre's home, without receiving any payment, because he was

5

"in love."[2]  In an affidavit, Kauranen explained that, while Volandre originally agreed to pay for the work "at Allure's cost," Kauranen later "attempted to gift Allure's work, labor and materials to Volandre."

On appeal, Allure contests that Kauranen attempted to gift the work to Volandre.  Instead, Allure argues that, as a matter of law, Kauranen could not have gifted the work to Volandre because (1) the work was funded using money Volandre knew to have been obtained unlawfully, and (2) any decision Kauranen made to gift the work to Volandre was not binding on Allure. The first argument goes to whether the gifts should be set aside as fraudulent conveyances.  However, Allure's complaint did not seek that relief, and whether the gifts should be set aside as fraudulent conveyances is not before us in this breach of contract action.  As to Allure's second argument, Allure relies solely on the fact that it and Kauranen are separate legal entities, without addressing the fact that Kauranen was the

---

[2] Kauranen testified that, as with the first project, he did not provide estimates for any of the other seven projects but that he did provide invoices for them.  Kauranen also testified that Allure no longer had access to the original invoices but that a former employee was able to recreate them.  The recreated invoices were attached to Allure's complaint.

president and decision maker of Allure.[3]  Allure's conclusory assertion on this point does not rise to the level of appellate argument and is waived.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

On this record, the evidence construed in the light most favorable to Allure establishes that, even if Volandre originally agreed to pay for the work, Kauranen later released Volandre from that obligation.

---

[3] Kauranen also held the positions as the director and secretary of Allure.

To the extent Kauranen made any contradictory, self-serving statements in his affidavits, those statements do not create a genuine issue of material fact.  See <u>Benvenuto</u>, 97 Mass. App. Ct. at 144.[4]

<u>Judgment affirmed</u>.

By the Court (Massing, Hand & Smyth, JJ.[5]),

<i>Paul Little</i>

Clerk

Entered:  December 9, 2024.

---

[4] Allure also argues that it and Kauranen were denied due process during the Pham action and during the summary judgment motion hearing in this matter.  First, whether Allure and Kauranen were denied due process in the Pham action is not within the scope of this appeal.  Second, with respect to the summary judgment motion hearing in this matter, Allure relies solely on the fact that Volandre's counsel "interrupted [Allure's] counsel without permission from the court."  A review of the motion hearing transcript shows that, after the interruption, the court took a recess, reconvened, and permitted Allure's counsel to finish his argument.  In these circumstances, there was no denial of due process.

[5] The panelists are listed in order of seniority.