NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1342

GROUP MANAGEMENT 0002, LLC

vs.

MARILYN YONG, personal representative.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Group Management 0002, LLC (GM2), brought this action against the defendant, Kenneth Yong, to enforce a judgment entered against Yong in the Supreme Court of Erie County in the State of New York, and to reach and apply the assets of the Yong Family Trust, in which the plaintiff "believes that Defendant Yong has an interest."[2]  Yong brought a special motion to dismiss under the anti-SLAPP statute, G. L. c. 231, § 59H, and a motion to stay the proceedings, and GM2 brought a cross motion for summary judgment.  The judge denied

_____

[1] Of the estate of Kenneth Yong.

[2] The complaint named the trustees of the Yong Family Trust as defendants, but they are not parties to this appeal.

the anti-SLAPP motion and the motion to stay proceedings, and allowed the plaintiff's motion for summary judgment, reserving the question of an award of attorney's fees. The plaintiff filed a motion to assess damages, and Yong filed a cross motion for leave to file a counterclaim and third-party complaint. The judge assessed damages at $106,015.08, which included the New York judgment of $74,617.57, itself reflecting $42,814.68 in damages and $31,802.89 in attorney's fees and costs, as well as attorney's fees and costs for this litigation, in the amount of $31,397.51, under the terms of the agreements that underlay the New York judgment, which are described in more detail below. The judge also denied Yong's cross motion.

Yong alone appealed, challenging only the denial of his anti-SLAPP motion, the allowance of the plaintiff's motion for summary judgment on the enforcement claim, and the award of attorney's fees. Yong died during the pendency of this appeal, and the personal representative of his estate (personal representative) has been substituted.

Background. 1. The underlying agreements. Yong was hired to do insurance audits by Interstate Premium Auditing, LLC (IPA), a New York limited liability company with its principal place of business in Rockland County, New York. At some point after he had been working for more than one month, Yong asserts, he was required by IPA as a condition of being paid to become a

2

"member" of GM2. He signed a "Member Declaration and Acknowledgment" (declaration), which included the following provisions:

"I understand and agree without any objections that as a Member/Partner of GM I do not qualify as an employee of GM, Member Management LLC, any other company or any firms/brokers I do business with while operating as a Member/Partner of GM so: (I) I agree that I will not attempt to have any labor related board/agency pursue a wage per hour, overtime or any other labor related claim on my behalf against GM under any circumstances; and (II) I agree that I will not attempt to have any labor related board/agency pursue a wage per hour, overtime or any other labor related claim on my behalf against Member Management LLC, any other company or any firms/brokers based upon what I have performed or have been paid as a Member/Partner of GM. (III) I agree to be individually and personally liable for and pay any parties expenses and damages stemming from my falsely pursuing any labor related claim based upon what I have performed or have been paid as a Member/Partner of GM."

The declaration also affirmed that Yong was a member of GM and said that Yong had read the "GM Operating Agreement" (operating agreement), knew it was always available on the GM website, and completely agreed with sections 3.8.1, 3.8.2, and 3.8.3 of the operating agreement. Yong also signed the Group Management 0002 LLC member meeting minutes (minutes), which state that by signing the minutes "Yong executes the terms of the Operating Agreement for GM." The operating agreement states,

"[a] principal purpose of the Company and the Members in entering into this Operating Agreement by becoming a Member of the Company is to allow each Member to perform premium audits, insurance claims adjustments, insurance appraisals,

3

insurance inspections, or other insurance related reports and services, for whatever agents, brokers, insurance companies or other firms the Member may desire, as an independent contractor and without the Member entering into any employment relationship with any such agent, broker, insurance company or other firm, or with the Company."


It also contains provisions that state,

"3.8 Personal Financial Liability

"Each Member agrees that he or she will not initiate, file or pursue any of the following, and agrees to be personally and financially liable for any party's expenses and damages if that same Member initiates, files for or pursues any of the following:

"3.8.1 A Member will be personally and financially liable if they initiate, file for or pursue a wage per hour claim, overtime claim or any other employee based labor related claim against the Company, Member Management LLC, any other company or any firms/brokers based upon what they performed, invoiced for or were paid for while performing any activities or services as a Member of the Company.

". . .

"3.8.4 A Member will indemnify and hold harmless the Company, Member Management LLC, any other Member or Manager of the Company from and against any and all actions, losses, liabilities, damages, costs and expenses, including reasonable attorney's fees, arising from or in connection with any violation by such Member of the agreements set forth in Section 3.8.1, 3.8.2, or 3.8.3.

". . .

"11.6 Attorneys' Fees

"In the event of any litigation or action to enforce the terms and conditions of this Agreement, the prevailing party shall be entitled to recover from the nonprevailing party all fees and costs of such enforcement, including, without limitation, filing fees, reasonable attorneys' fees and other legal fees and costs, and costs of collection."


4

2.  The New York action.  Yong worked for IPA from February to June, 2018.  He was paid approximately $4,000 for his work. Upset with what he perceived to be unfair practices from IPA, including their failure to disclose the requirement that he join GM2 in order to receive payment, Yong brought labor-related claims before the Massachusetts Attorney General, asserting nonpayment of wages and independent contractor misclassification.  That claim was successful, and IPA was found to have misclassified him as an independent contractor.  As a result, IPA was required to pay penalties and incurred costs of a combined $41,744.68.  At oral argument before the panel, the personal representative's counsel represented that Yong received a few thousand dollars in additional compensation as a result of the Attorney General proceeding.

IPA brought suit against GM2 in the Erie County Supreme Court in New York (New York action) alleging fraudulent inducement, breach of contract, unjust enrichment, and negligent misrepresentation, and seeking the amount it paid in penalties and costs due to the Massachusetts Attorney General proceeding. GM2 in turn filed a third-party complaint against Yong for, among other things, breach of the contract between GM2 and Yong, alleging breach of the operating agreement, the minutes, and the declaration.

Although he was served with process, Yong took no action of any kind with respect to the New York action, and a default judgment entered against him. The judge ordered that there subsequently be a hearing on damages. Ultimately though, GM2 and IPA stipulated -- in a stipulation of course not joined by Yong -- to the damages owed by GM2 to IPA, and therefore by Yong to GM2, in the amount of $42,814.68, as well as to the attorney's fees owed by Yong to GM2, in the amount of $31,802.89. The stipulation was approved by a judge of the New York court. GM2 then brought this action.

Subsequently, but prior to judgment below, Yong through counsel brought a motion in the New York action to vacate the default judgment, arguing only that Yong's default was excusable under New York law and that the Erie County Supreme Court lacked jurisdiction because Yong was never properly served with the third-party complaint nor the default judgment. That motion was denied, and the denial has not been appealed.

Discussion. We address first Yong's anti-SLAPP motion. The personal representative argues that this action is based solely on petitioning activity, Yong's filing of his complaint with the Attorney General, which had both factual and legal support. See Bristol Asphalt Co. v. Rochester Bituminous Products, Inc., 493 Mass. 539, 550 (2024) ("unless the opponent to a special motion to dismiss can show that the petitioning

6

activity was 'devoid' of 'any' reasonable basis in fact or law, the opponent's claims -- regardless of their underlying merits -- must be dismissed" [citation omitted]).

We may assume without deciding that that is an accurate description of the Erie County action against Yong. Nonetheless, and despite the personal representative's attempts to frame this as a contract action, that petitioning activity is not the basis of this action.  This is an action to enforce a judgment.  The basis for it is a claim of the existence of a valid out-of-State judgment entitled to full faith and credit under art. IV, § 1, of the United States Constitution in an action over which the out-of-State court had jurisdiction.

If those elements are present, that is the end of the matter.  It is of no moment what the basis of the underlying suit was, whether it was decided correctly, or whether the defendant would have been liable under Massachusetts law.  See V.L. v. E.L., 577 U.S. 404, 407 (2016); Baker v. General Motors Co., 522 U.S. 222, 233-234 (1998).  In light of this, the special motion to dismiss was properly denied.

Turning to the summary judgment, which we review de novo, Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 330 (2021), the burden is on the plaintiff, as the moving party, to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  See id.; Guttierrez

7

v. Managers of Flagship Wharf Condominium, 100 Mass. App. Ct. 678, 682-683 (2022).

The only reason our appellate courts have found a judgment of a sister State will not be entitled to full faith and credit is that the court that issued it lacked jurisdiction. See V.L., 577 U.S. at 407. It may also be that a judgment void for another reason, such as incompetency of the defendant, may not be entitled to full faith and credit. See Berrios v. Perchik, 20 Mass. App. Ct. 930, 932-933 (1985). In this case, the personal representative argues primarily, though, that this is in fact a contract action. Despite the recitation in the complaint of the details of the underlying case based on the agreements, this case is based on the existence of the New York judgment, not on those agreements. The personal representative also correctly argues that the default judgment is not entitled to res judicata effect. See Treglia v. MacDonald, 430 Mass. 237, 241-242 (1999). But res judicata is not what is at issue with respect to summary judgment in this case. Relitigation of the facts and law applied in New York is not required for the plaintiff's success; consequently, the motion for summary judgment was properly allowed.

This leaves the question of attorney's fees, which were awarded pursuant to the operating agreement. The personal representative argues that "the Court below erred in awarding

attorneys' fees and costs to GM2 on the basis of the GM2 contract." The plaintiff points to the provisions of the operating agreement, particularly paragraph 11.6.

We agree with the personal representative that the award of attorney's fees must be reversed. In Massachusetts, at least, assuming the operating agreement is otherwise a valid contract, this contract is clearly unenforceable. By statute, "[n]o person shall by a special contract with an employee or by any other means exempt himself from" the provisions of the Wage Act, including the provisions allowing an individual to bring a misclassification claim. G. L. c. 149, § 148. See also G. L. c. 149, §§ 150, 148B. The operating agreement plainly violates § 148. "An agreement to circumvent the Wage Act is illegal even when 'the arrangement is voluntary and assented to.'" Melia v. Zenhire, Inc., 462 Mass. 164, 170 (2012), quoting Camara v. Attorney Gen., 458 Mass. 756, 760-761 (2011). Illegal contracts are not enforceable. See Arcidi v. National Ass'n of Gov't Employees, Inc., 447 Mass. 616, 619 (2006).[3] Therefore,

_____

[3] Even if the judgment in the New York action necessarily implies a conclusion that the contract is enforceable, because it was a default judgment in which the question was never litigated, it would have no preclusive effect with respect to its enforceability in this action. See Treglia, 430 Mass. at 242-43.

9

attorney's fees should not have been awarded under its provisions.

Consequently, to the extent the judgment orders an award of attorney's fees, it is reversed.  In all other respects, the judgment is affirmed.  The plaintiffs' request for appellate attorney's fees is denied.

<u>So ordered</u>.

By the Court (Rubin, Hand & Smyth, JJ.[4]),

Clerk

Entered:  August 19, 2025.

---

[4] The panelists are listed in order of seniority.